# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| McDONALD'S CORPORATION,<br>               Plaintiff,<br><br>    vs.<br><br>EAST LIBERTY STATION<br>ASSOCIATES,<br>               Defendant. | Civil Action No. 14-313<br>Chief Magistrate Judge Maureen P. Kelly<br><br>Re: ECF Nos. 127 and 133 |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff/Counterclaim Defendant McDonald's Corporation ("McDonald's") and Defendant/Counterclaim Plaintiff East Liberty Station Associates ("ELSA") are parties to a 1986 Ground Lease (the "Lease") relating to the land located at 6361 Penn Avenue, Pittsburgh, Pennsylvania (the "Property"), upon which a McDonald's-branded restaurant (the "Penn Avenue Restaurant") is situated. McDonald's initiated this action against ELSA on March 11, 2014, alleging that ELSA breached its obligations under the Lease after McDonald's exercised the Purchase Option contained therein. ECF No. 1. In addition to claims for breach of contract (Counts II and III), McDonald's also sought a declaratory judgment regarding the validity of its exercise of the Purchase Option (Count I). Id. ELSA filed a Counterclaim against McDonald's on January 19, 2015, bringing its own claim for breach of contract relative to whether McDonald's had materially breached the Lease (Count I) as the result of unlawful conduct occurring on the leased premises, and seeking a declaratory judgment (Count II) as to its ongoing obligations under the Lease. ECF No. 16.

After the close of discovery and the filing of cross-motions for summary judgment, this Court held that the validity of McDonald's exercise of the Purchase Option in 2012 was a threshold issue to be resolved in order to determine the status of ownership of the Property, and the rights and/or obligations of the parties relative thereto. ECF No. 73. To that end, a non-jury trial was held before the undersigned and, after careful review of the evidence presented at the trial, the Court found that McDonald's did not validly exercise the Purchase Option. ECF No. 100. Accordingly, the issues remaining for resolution are: (1) whether ELSA properly terminated the Lease and demanded possession from McDonald's; and (2) whether McDonald's was entitled to notice and an opportunity to cure any alleged default of the Ground Lease prior to termination.

On November 30, 2017, the Court conducted a status conference with counsel for the parties. ECF No. 120. Thereafter, the Court issued a summary judgment Scheduling Order. ECF No. 122. On January 12, 2018, ELSA filed a Motion for Summary Judgment. ECF No. 127. On the same date, McDonald's filed a Motion for Partial Summary Judgment. ECF No. 133. ELSA and McDonald's also filed briefs and materials in support of their respective motions. For the reasons that follow, the Motion for Summary Judgment filed on behalf of ELSA will be denied, and the Motion for Partial Summary Judgment filed on behalf of McDonald's also will be denied. This matter will now proceed to trial.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The following relevant facts are undisputed. ECF No. 131. ELSA owns and operates the Village of Eastside Shopping Center (the "Shopping Center") in the East Liberty neighborhood of Pittsburgh, Pennsylvania. ELSA's predecessor-in-interest and McDonald's entered into the Lease at issue and, pursuant to the terms of the Lease, McDonald's constructed a building to

house the restaurant on the Shopping Center grounds. McDonald's completed construction in 1987, and owns the Penn Avenue Restaurant building. ECF No. 132-1 at 8-9. ELSA, as successor-in-interest, is McDonald's current landlord, and is the "Lessor" under the Lease; McDonald's is the "Lessee."

The portions of the Lease relevant to the pending motions are as follows.

Section 5, Covenant F of the Lease provides: "Lessee covenants and agrees, during the term of this Lease and for such further time as Lessee, or any person claiming under it, shall hold the Demised Premises or any part thereof: … [t]o comply with all governmental laws, rules and regulations applicable to the use, development or operation of the Demised Premises." ECF No. 132-1 at 5-6.

Section 8A of the Lease provides:

> Notwithstanding any other provision in this Lease to the contrary, Lessee or any Sublessee or assign may use the demised premises as a restaurant or any other lawful use that does not conflict with an existing covenant between the Lessor and another tenant in the [Village of Eastside Shopping Center] at the time of the assignment or subletting. Lessor represents that no presently existing exclusive use covenant will prohibit the Lessee from operating in any manner or serving any type of food. Lessee agrees to give Lessor written notice thirty days prior to any change of use and to allow the premises to be used only for the operation of a retail establishment normally found in the highest class of shopping centers and malls in the county in which the demised premises are located.

ECF No. 132-1 at 9.

Section 19 E of the Lease, "Miscellaneous Provisions," sets forth a notice requirement as follows:

> If … it shall become necessary or convenient for one of the parties to serve any notice, demand or communication upon the other party, such notice, demand or communication shall be in writing, signed by the party serving the same, sent by registered or certified United States mail, return receipt requested, postage prepaid and …
>
> (b) if intended for Lessee, shall be addressed to:

   McDonald's Plaza
   Oak Brook, Illinois 60521
   Attn: Director – Real Estate Legal Department

or to such other address as either party may have furnished to the other in writing as a place for the service of notice. Any notice so mailed shall be deemed to have been given as of the time it is deposited in the United States mail.

ECF No 132-1 at 13-14.

ELSA, in its Motion for Summary Judgment, further references the following relevant portion of Section 8 of the Lease:

> Lessee may, without the consent of the Lessor, sublease or assign this Lease or its rights under this Lease. In such event, Lessee shall remain liable for the payment of all rent required to be paid under this Lease and for the performance of all terms, covenants, and conditions undertaken by Lessee.

Id. at 8. Section 7 of the Lease provides, in pertinent part, that "…Lessee shall have the right to use and/or occupy the Demised Premises for any lawful purpose…." Id. at 7.

At all relevant times prior to January 1, 2016, Malik Enterprises, Inc. ("Malik"), was the franchisee/operator of the Penn Avenue Restaurant. On January 29, 2014, Shantia Dennis ("Dennis"), an employee of the franchisee, was arrested at the Penn Avenue Restaurant. The arrest occurred as the result of a Pittsburgh Bureau of Police controlled purchase of heroin that was arranged to take place at the Penn Avenue Restaurant, where Dennis is alleged to have been distributing drugs. ECF No. 131 at 4. As made evident from the Criminal Complaint, ECF No. 136-4, the purchase was initiated with a confidential informant, who had been instructed by Dennis to "come through the drive through and order a Happy Meal toy. Further instructions were to pull up to the first drive through window and give Dennis $82 in US Currency at which time she would make the delivery." [1] ECF No 136-4 at 6.

---

[1] Happy Meal is a trademark of McDonald's used for a child's meal and toy.

The informant, accompanied by a police officer, arrived at the Penn Avenue Restaurant and, as instructed, requested a Happy Meal and handed Dennis $82. The police officer observed Dennis place a bundle of "stamp bags" of heroin into a Happy Meal box and hand it to the informant. Id. The police officer reported the sale to officers waiting nearby, and Dennis was taken into police custody. The arresting officers searched Dennis and her purse. A brick of heroin was located inside Dennis's purse, and $80 of police-marked currency was located in her bra. An additional $80 and a small amount of marijuana were also recovered from Dennis's bra, giving rise to an inference of a prior heroin transaction. ECF 136-4 at 6. Dennis was charged with three felony and two misdemeanor state criminal offenses relative to drug possession and distribution. Id. at 2-3.

On February 14, 2014, ELSA's property management company sent a certified letter to McDonald's declaring default and termination of the Lease effective immediately. ECF No 132-2. In its letter, ELSA cited the relevant portions of the Lease requiring that McDonald's use of the premises be in compliance with all governmental laws, rules and regulations, and used only for a retail establishment "normally found in the highest class of shopping centers and malls." Id. ELSA noted that "[a] serious and elaborate drug trafficking scheme has been operating on a consistent basis on the premises, and a recent arrest brought national and local attention to the McDonald's referenced," and constituted a "material breach of the Lease." Id. ELSA stated that it was exercising its rights both under the Lease and under applicable law, and stated that as a result of McDonald's default, and the "grave and illicit nature of the activities," ELSA was "not required to provide a cure period." Id. Accordingly, ELSA requested "a time frame for the orderly surrender of the premises so as to minimize further adverse attention to [the Shopping Center]." Id.

5

McDonald's responded to ELSA's correspondence by filing the instant action on March 11, 2014, alleging that ELSA was using the Dennis arrest as a pretext in furtherance of its refusal to permit McDonald's prior exercise of the purchase option. In addition, McDonald's alleges that ELSA's surrender demand and refusal to grant a 30-day cure period were clear violations of the Lease. ECF No. 1 ¶¶ 64, 65.

Discovery is closed and the essential facts surrounding the import of Dennis's arrest, as well as additional grounds asserted on ELSA's behalf for terminating the lease, are in dispute.

## II. CROSS MOTIONS FOR SUMMARY JUDGMENT

### A. ELSA's Motion for Summary Judgment

In ELSA's Motion for Summary Judgment, ELSA argues that the evidence establishes that McDonald's abandoned its obligations under the Lease immediately upon entering into the Malik franchise agreement and failed to ensure that Malik operated the premises in a lawful manner in accordance with Lease requirements. ECF Nos. 127, 137 at 4-8.

In support of its motion, ELSA points to McDonald's pleadings, confirmed by the testimony of its corporate designee, that McDonald's has vested in its franchisee exclusive responsibility for all obligations and liabilities with regard to the operation of the restaurant and relevant Lease provisions. Id. McDonald's never provided the franchisee with a copy of the Lease, and the franchisee was unaware of the terms of the Lease and McDonald's obligations thereunder. Id. at 7. The franchisee further testified that he does not conduct background checks on all employees, and does not know the names of those employed at his Penn Avenue Restaurant; however, he agrees that the franchise was obligated to operate in a lawful manner. Id. at 6-7.

ELSA argues that as a result of McDonald's lack of franchise oversight and abdication of its responsibilities under the terms of the Lease, McDonald's has permitted dangerous criminal activity to occur on the premises. Dennis's conduct of engaging in the sale and distribution of heroin in Happy Meals boxes and her resulting arrest yielded widespread news coverage in local and national media markets, and resulted in an outpouring of phone calls to ELSA's property manager from concerned and frightened neighboring property owners and tenants. ELSA states that its property manager was required to engage in efforts to control the damage to the Shopping Center's reputation and to assure tenant safety. Id. Accordingly, ELSA contends that McDonald's materially breached the Lease provision regarding lawful operation of the premises, absolving ELSA of its obligation under the Lease to provide McDonald's an opportunity to cure the breach.

In the alternative, ELSA contends that it has validly terminated the lease as a result of McDonald's failure to cure repeated violations of a local ordinance regarding the timing of garbage collection. ELSA's property manager placed McDonald's on notice of the issue after being contacted by a city council representative regarding his receipt of complaints from residential neighbors, who stated that garbage was being collected in the middle of the night, awakening them from sleep. ECF No. 131 at 4-5. McDonald's responded that the Penn Avenue Restaurant is "operated by a McDonald's franchisee who exclusively and independently operates the restaurant." Id. McDonald's stated it contacted the franchisee to ensure that steps were taken to rectify the issue. However, complaints continued to be received, and ELSA sent five notices of the ongoing breach of the Lease to various addresses and recipients, including McDonald's counsel, a McDonald's-related post office box in Ohio, and McDonald's corporate offices in Oak Brook, Illinois. Id. ¶¶ 15-20.

In opposing ELSA's Motion for Summary Judgment, McDonald's counters that the motion should be denied for three independent reasons. First, McDonald's argues that ELSA's new abandonment theory is not a valid basis for termination of the Lease. ECF No. 145 at 2-4. Second, McDonald's asserts that ELSA failed to provide McDonald's with the requisite notice and an opportunity to cure any breach of the Lease. Id. at 4-6. Third, McDonald's argues that, even if ELSA's new abandonment theory was legally viable, it could not prevail because the facts contradict it. Id. at 6-9.

**B. McDonald's Motion for Partial Summary Judgment**

McDonald's seeks partial summary judgment as to the sole remaining issue of whether ELSA's termination of the Lease was valid. ECF No. 133. In support of its argument that ELSA did not validly terminate the ground lease, McDonald's relies on three sub-arguments. ECF No. 134 at 8.

First, McDonald's argues that it did not breach an affirmative covenant. Id. at 9-13. The gist of McDonald's argument in favor of partial summary judgment is that the Dennis incident was isolated, involved one employee, and was not a pattern of conduct at the Penn Avenue Restaurant. No other franchise employees were arrested, and there is no evidence that similar activity occurred prior to or after Dennis's arrest.[2] McDonald's further argues that ELSA has not produced evidence of the loss of any tenants, nor of any other quantifiable economic detriment suffered as a result of Dennis's arrest, or the rush of negative media attention in the aftermath of the incident. With regard to trash collection issues, McDonald's points to evidence of the sporadic and nonspecific nature of the alleged violations, so as to preclude a finding of material breach or of an ongoing breach sufficient to impose forfeiture of its interest in the leased

---

[2] ELSA correctly point out that no one knows for how long a period of time this criminal conduct occurred at the Penn Avenue Restaurant. ECF No. 137 at 6.

property. Thus, McDonald's contends the single episode of misconduct beyond its control and the timing of garbage pick-up represent "a classic 'technical' or 'petty dispute' that does not justify eviction." Id. at 19.

Second, McDonald's finds fault with the notice provided to it by ELSA's property manager and counsel, because ELSA's correspondence addressing the issue either did not comply with the provisions of the Lease requiring notice and a demand for performance, or was sent to an address not specified by the Lease for service of legal notice of alleged breaches. Id. at 13-17.

Third, McDonald's asserts that no alleged default continued for thirty days. Id. at 17-18. As to the Dennis arrest and trash removal issues, McDonald's argues that ELSA has not even alleged that any drug-related activity occurred after the arrest of Dennis and ELSA has not alleged that any trash removal issued continued unaddressed for thirty days. Id.

Alternatively, McDonald's argues that its substantial performance of the Lease bars forfeiture. In particular, McDonald's points to thirty years of on-time rent payments, and no other complaints by ELSA regarding compliance with the terms of the Lease. Id. at 18-20.

In opposing McDonald's Motion for Partial Summary Judgment, ELSA makes two arguments. First, ELSA argues that McDonald's is not entitled to a cure period because it has not honored its contractual obligations as required by critical provisions of the Lease. ECF No. 133 at 3-7. ELSA, citing to deposition testimony of key witnesses, contends that McDonald's did not view itself as responsible for any conduct at the Penn Avenue Restaurant site, despite the specific Lease provisions imposing such responsibility. As such, ELSA asserts that McDonald's clearly abandoned its Lease obligations to ELSA. Id. at 7.

Second, ELSA argues, in the alternative, that identified deposition testimony elicited during discovery demonstrates issues of material fact surrounding the Lease termination that should be tried before a jury. Id. at 7-9. ELSA points to decisions of Pennsylvania courts routinely viewing questions of contract materiality to be questions of fact to be decided by a jury. Id. at 8.

## III. STANDARD OF REVIEW

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). The burden on a motion for summary judgment is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

Once the movant meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986);

Celotex, 477 U.S. at 323–25. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in pleadings. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Anderson v. Liberty Lobby, 477 U.S. at 248–49; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n. 3 (3d Cir. 1998). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). Inferences based upon speculation or conjecture, however, do not create a material factual dispute sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

As indicated, each party has moved for the entry of judgment as a matter of law. However, the standards under which a court grants or denies each party summary judgment do not change by virtue of cross-motions being presented. Home for Crippled Children v. Prudential Insurance Co. of America, 590 F. Supp. 1490, 1495 (W.D. Pa. 1984). "On cross-motions for summary judgment, the law in our Circuit is clear—the Court considers each Motion on its own merits, tested against the standards of [Federal Rule of Civil Procedure 56]." U.S. Equal Employment Opportunity Comm'n v. Bob Evans Farms, LLC, 275 F. Supp.3d 635, 639 (W.D. Pa. 2017) (internal citations omitted).

## IV. DISCUSSION

The undersigned is well-aware from her service on this Court that the distribution and use of heroin is a crisis that has been impacting the communities and citizens of Western Pennsylvania in recent years. The Court recognizes that in January 2014, the same month that Dennis sold heroin using a Happy Meal out of the drive through window at the Penn Avenue Restaurant, the United States Attorney's Office for the Western District of Pennsylvania issued a statement regarding multiple heroin deaths that occurred over a ten-day period in the Pittsburgh area, noting "[t]he recent dramatic increase in the number of heroin overdoses in our region has quickly become the most pressing crime problem for law enforcement." https://www.justice.gov/usao-wdpa/pr/us-attorney-statement-heroin-overdose-deaths. This lawsuit brings to the fore the reach of heroin distribution schemes in this community and one landowner's reaction to learning that property subject to a lease was used in furtherance of heroin-related activity.

Over fifteen years ago, the United States Supreme Court affirmed the right of a local housing authority, acting pursuant to applicable statutory and regulatory provisions, to evict a public housing tenant who had no knowledge of a household member or guest's drug-related activity. The Court determined that such "no-fault" eviction is a common "incident of tenant responsibility under normal landlord-tenant law and practice," and furthered a critical public interest. Department of Housing and Urban Development v. Rucker, 535 U.S. 125, 133 (2002) (quoting 56 Fed. Reg. at 51567).

> [T]here is an obvious reason why Congress would have permitted local public housing authorities to conduct no-fault evictions: regardless of knowledge, a tenant who "cannot control drug crime, or other criminal activities by a household member which threaten health or safety of other residents, is a threat to other

12

> residents and the project." 56 Fed. Reg. at 51567. With drugs leading to "murders, muggings, and other forms of violence against tenants," and to the "deterioration of the physical environment that requires substantial government expenditures," [] it was reasonable for Congress to permit no-fault evictions in order to "provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs."

Id. (citations omitted). In the instant action, the Lease at issue requires the use of the premises be lawful. This term serves the Lessor's interest to ensure that a tenant's conduct does not present a threat to the safety of other tenants and the public at large.

Against this backdrop, the parties, through the pending cross motions for summary judgment, ask the Court to determine as a matter of law whether the circumstances giving rise to Dennis's arrest constitute a material breach of the Lease, so as to render ELSA's termination of the Lease without opportunity to cure appropriate, and whether the doctrine of substantial performance otherwise precludes termination, where McDonald's has abided by other provisions of the Lease for nearly thirty years. Following thorough review of applicable case law, the Court finds that this determination is for a jury.

The Lease at issue was executed in the Commonwealth of Pennsylvania. Accordingly, to resolve the present dispute, this Court, sitting in diversity, must apply Pennsylvania law to substantive issues of contract interpretation, and federal law to any apparent procedural issues. Collins v. Mary Kay, Inc., 874 F.3d 176, 181-182 (3d Cir. 2017); Beazer East, Inc. v. Mead Corp., 34 F.3d 206, 212 (3d Cir. 1994).

Under Pennsylvania law, "a lease is a contract and 'is to be interpreted according to contract principles.'" Norfolk Southern Ry. Co. v. Pittsburgh & West Virginia R.R., 101 F. Supp.3d 497, 524 (W.D. Pa. 2017), aff'd 870 F.3d 244 (3d Cir. 2017) (quoting Huang v. BP

Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) and Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 389 (Pa. 1986)).

Pennsylvania contract law generally provides that when performance of a duty under contract is due, any nonperformance is a breach. Oak Ridge Constr. Co. v. Tolley, 504 A.2d 1343, 1348 (Pa. Super. Ct. 1985); Restatement (Second) of Contracts § 235(2) (1981). However, the law is also "clear that only [a] material [breach] of [contract] by one party discharges the other [party's duties]. An immaterial failure does not operate as such a discharge." Sylvester v. Southwestern Energy Production Co., 2009 WL 3633835, at *2 (M.D. Pa. Nov. 2, 2009) (quoting Schlein v. Gross, 142 A.2d 329, 333 (Pa. Super. Ct. 1958)). "Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end is a question of degree..." Id. (quoting Widmer Engineering, Inc. v. Dufalla, 837 A.2d 459, 468 (Pa. Super. Ct. 2003)). In other words, a breach must be "so serious [that] it goes directly to the heart and essence of the contract, rendering the breach incurable." LJL Transp. Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 642 (Pa. 2009). In determining whether a failure of performance is material, the court considers the following factors:

   a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

   b) the extent to which the injured party can be adequately compensated for that part of the that benefit of which he will be deprived;

   c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

   d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

   e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

Widmer Engineering, 837 A.2d at 468. These materiality factors are "to be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances." Restatement (Second) of Contracts § 241 cmt a. No single factor is dispositive. Norfolk Southern, 512 F.3d at 92.

Critical to the disposition of the pending motions, it has long been observed that whether a breach of contract constitutes a material breach is a question of fact. See Seaway Painting, Inc. v. D.L. Smith Co., 242 B.R. 834, 1999 WL 1285826 (E.D. Pa. Dec. 21, 1999) (citing Forest City Grant Liberty Assocs. v. Genro II, Inc., 652 A.2d 948, 951 (Pa. Super. Ct.1995)). However, "[a]s is true of virtually any factual question, if the materiality question in a given case admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law." Norfolk Southern, 512 F.3d at 92 (internal quote and citations omitted).

In this case, the evidence does not admit of resolution as a matter of law. Weighing the relevant factors, ELSA contends it was deprived of the benefit of its agreement that the Lessee would provide sufficient oversight of the premises to ensure that operations were lawful, such that its presence would enhance or at minimum, not detract, from the reputation and commercial viability of the Shopping Center.

ELSA presents the testimony of McDonald's field manager, who agrees that it was solely "the franchisee's responsibility to govern the activity that takes place within their restaurants." ECF No. 130-2 at 11. This included vesting the franchisee with all responsibility to prevent criminal activity on restaurant property and to determine hiring criteria. Id. at 10. McDonald's provided no oversight of the property and did not share Lease requirements with its franchisee.

15

ECF No. 130-5 at 42. ELSA further presents evidence of the media attention to the Penn Avenue Restaurant, phones "lighting up" with calls from concerned tenants and neighbors and damage to its reputation. According to its property manager, "[a]nybody and everybody who knew we owned that shopping center were calling, cell phone, office, neighboring companies, at the task force meetings. It was the talk, sadly, of the entire community for quite a while." ECF No. 130-1 at 5. A reasonable factfinder could find that McDonald's breach deprived ELSA of the "benefit" bargained for under the Lease, *i.e.*, a Lessee's operation of an establishment consistent with those "normally found in the highest class of shopping centers and malls." See e.g., International Diamond Importers, Ltd. V. Singularity Clark, L.P., 40 A.3d 1261, 1271 (Pa. Super. 2012)(the trial court erred in determining whether a tenant jewelry store materially breached lease when residential space "went dark" and unused for a period of time, and otherwise failed to maintain it in a neat, clean, orderly condition, as this issue was for a jury to decide).

A reasonable factfinder could also determine that Dennis's conduct on the premises is sufficiently isolated that it does not constitute a material breach, given the evident forfeiture to be suffered by McDonald's, in the loss of its lease and the building and improvements thereon.[3] Similarly, a reasonable factfinder could determine that the trash collection issue does not constitute a continuing violation of the Lease, sufficient to render termination appropriate. This, however, requires "weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific case." International Diamond Importers, Ltd., 40 A.3d at 1271 (quoting 2401 Pennsylvania Ave. Corp. v. Federation of Jewish

---

[3] The record presented to the Court does not address whether Dennis was engaged in the illegal conduct as a part of a heroin or other drug distribution organization that warranted police surveillance and a controlled purchase. Although the Criminal Complaint makes reference to a written statement filed by Dennis, ECF No. 136-4 at 6, neither party provides or makes reference to the specific contents of the written statement.

16

Agencies of Greater Phila., 466 A.2d 132, 139 (Pa. Super. 1983)). See also, Sabatini v. Its Amore Corp., 455 F. App'x 251, 256–57 (3d Cir. 2011) ("[w]e also conclude that the District Court correctly held that there were genuine issues of material fact relating to whether Amore's default was material and whether the doctrine of substantial performance applied. Only a material breach of a contract by one party discharges the other party of liability under the contract. 'For a breach to be material, it must go to the essence of the contract.' Materiality of a breach is a question of fact." (internal citations omitted)).

## V. CONCLUSION

In light of the presence of genuine issues of material fact regarding whether Dennis's conduct and McDonald's lack of oversight constitute a material breach of the Lease, and whether ELSA otherwise appropriately terminated the Lease as a result of the alleged violations of local ordinances, the pending Motions for Summary Judgment will be denied. An appropriate Order follows.

## ORDER

AND NOW, this 29th day of June, 2018, upon thorough consideration and review of the Motion for Summary Judgment filed on behalf of ELSA, ECF No. 127, and the Motion for Partial Summary Judgment filed on behalf of McDonald's, ECF No. 133, and the extensive

briefs and materials filed in support and in opposition thereto, IT IS HEREBY ORDERED that the Motions are DENIED.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


cc:     All counsel of record by Notice of Electronic Filing